# In the United States Court of Appeals
# for the District of Columbia Circuit

————————————————

NATIONAL TRUST FOR HISTORIC PRESERVATION
IN THE UNITED STATES,

*Plaintiff-Appellee / Cross-Appellant*

v.

NATIONAL PARK SERVICE *et al.*,

*Defendants-Appellants / Cross-Appellees*

————————————————

On Appeal from the United States
District Court for the District of Columbia

————————————————

**BRIEF AMICUS CURIAE FOR THE AMERICAN CONSERVATIVE UNION
IN SUPPORT OF DEFENDANTS-APPELLANTS
AND IN SUPPORT OF VACATING THE PRELIMINARY INJUNCTION (CORRECTED)**

————————————————

JED RUBENFELD
127 Wall St.
New Haven CT 06511
Tel.: 203-432-7631
jed.rubenfeld@yale.edu

RICHARD JAFFE
428 J Street, 4th Floor
Sacramento, California 95814
Tel: 916-492-6038
Fax: 713-626-9420
rickjaffeesquire@gmail.com

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), undersigned counsel certifies as follows:

## A. Parties and Amici

The parties are set forth in Defendants/Appellants' Rule 28(a)(1) Certificate, Doc. No. 2172331 (May 7, 2026) at 2, which is incorporated herein by reference. This brief is filed by Amicus Curiae the American Conservative Union. No other amici have appeared to date in this Court or the district court.

## B. Rulings Under Review

The rulings under review are set forth in Defendants/Appellants' Rule 28(a)(1) Certificate, Doc. No. 2172331 (May 7, 2026) at 3, which is incorporated herein by reference.

## C. Related Cases

This case was previously before this Court. *See National Trust for Historic Preservation in the United States v. National Park Service*, Nos. 26-5101, 26-5108. Undersigned counsel is unaware of any other related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

_____/s/ Richard Jaffe_____
RICHARD JAFFE

# TABLE OF CONTENTS

Table of Authorities………..……………………………………………… i

Statement of Interest of Amicus Curiae………………………………… 1

Summary of Argument……………………………………………………. 2

Procedural Statement……………………………………………………. 4

Argument…………………………………………………………………. 5

    I.  The Injunction Must Be Vacated Because the Statutory
Prohibition at Issue Here Does Not Confer Rights on the Party
Seeking Ultra Vires Review……….…………………………. 6

        A.  The ultra vires cause of action is a judge-made remedy
to safeguard rights Congress "intended to be enforced"
and is available only within "painstakingly limited"
boundaries…………………….…………………….……. 6

        B.  Under this Circuit's and the Supreme Court's controlling
case law, no ultra vires cause of action can be stated unless
the statutory "prohibition at issue" "confer[s] rights on
the individual seeking ultra vires review."……………….. 7

        C.  The statutory prohibition at issue in this case does not
confer rights on Plaintiff……………………………………. 10

    II.  The Relief Granted Below Was Not Traditionally Accorded
in Equity……………………………………………….…………... 14

    III. Plaintiff's Suit Is Barred by Laches………………………… 17

Conclusion…………………………………………………………….….. 19

# TABLE OF AUTHORITIES

**Cases**

*Acadian Heritage Realty v. City of Lafayette*, 451 S.2d 17 (La. App. 1984)..........17

*Ala. Power Co. v. Stringfellow*, 153 S. 629 (Ala. 1934)..........................................16

*Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015).....................3, 15

*B & W Mgt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879 (D.C. App. 1982).....................16

*Barnes v. Hathorn*, 54 Me. 124 (1866)..................................................................17

*Chamber of Commerce v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996) ...........................11

*Crabtree v. City Auto Salvage Co.*, 340 S.W.2d 940 (Tenn. App. 1960)................17

*Dalton v. Specter*, 511 U.S. 462  (1994)...................................................................7

*Falloon v. Schilling*, 29 Kan. 292 (1883) ...............................................................16

*Fed. Educ. Ass'n v. Trump,* 2025 U.S. App. LEXIS 25013 (D.C. Cir. Sept. 25, 2025) ....................................................................................................................7, 13

*Fed. Express Corp. v. U.S. Dep't of Comm.*, 39 F.4th 756 (D.C. Cir. 2022) ............8

*Feldstein v. Kammauf*, 121 A.2d 716 (Md. 1956) ...................................................17

*Global Health Council v. Trump*, 153 F.4th 1 (D.C. Cir. 2025) .......... 2, 8, 9, 10, 15

*Green v. Castle Concrete Co.*, 509 P.2d 588 (Colo. 1973) .....................................16

*Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308 (1979) .............................................................................................. 3, 15, 17

*Holmberg v. Armbrecht*, 327 U.S. 392 (1946).......................................................18

*Jillson v. Barton*, 229 S.E.2d 476 (Ga. App. 1975)...............................................16

*John Hancock Life Ins. Co. of N.Y. v. Solomon Baum Irrevocable Family Life Ins. Trust*, 783 Fed. Appx. 89 (2d Cir. 2019) ............................................................18

*Livingston v. Davis*, 50 N.W.2d 592 (Iowa 1951) ..................................................17

*Mathewson v. Primeau*, 395 P.2d 183 (Wash. 1964) .............................................17

*N.W. Water Corp. v. Pennetta*, 479 P.2d 398 (Colo. App. 1970)...........................16

*Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 26 F.4th 960 (D.C. Cir. 2022) ........................................................................................................11

*Nat'l Trust for Historic Preservation in the United States v. Nat'l Park Serv.*, No. 25-4316, 2026 U.S. Dist. LEXIS 39946 (D.D.C. Feb. 26, 2026)..........................4

*Nat'l Trust for Historic Preservation v. Nat'l Park Serv.*, No. 25-4316, 2026 U.S. Dist. LEXIS 69920 (D.D.C. Mar. 31, 2026) ......................................................5, 8

*Parkersburg Builders Material Co. v. Barrack*, 118 W. Va. 608 (1937)................16

*Perry Mount Park Cemetery Assn. v. Netzel*, 264 N.W. 303 (Mich. 1936) ............17

*Salt River Valley Water Users' Assn. v. Arthur*, 74 P.2d 582 (Ariz. 1937).............16

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328 (2019) ..............................................................................................................17

*Shamburger v. Scheurrer*, 198 S.W. 1069 (Tex. App. 1917) ..................................17

*Sierra Club v. Morton*, 405 U.S. 727 (1972) .........................................................14

*State ex rel. Stoyanoff v. Berkely*, 458 S.W.2d 305 (Mo. 1970) .............................17

*The Everosa*, 93 F.2d 732 (1st Cir. 1937)..............................................................18

*Wernke v. Halas*, 600 N.E.2d 117 (Ind. App. 1992)...............................................17

*White v. Bernhart*, 241 P. 367 (Idaho 1925)..........................................................17

**Statutes**

40 U.S.C. § 8106......................................................................... 2, 5, 11, 12, 13,14

**Other Authorities**

D. DOBBS, LAW OF REMEDIES (2d ed. 1993)..........................................................17

H.G. WOOD, THE LAW OF NUISANCES IN THEIR VARIOUS FORMS (3d ed. 1893) ...................................................................................................3, 16

**BRIEF AMICUS CURIAE**
**FOR THE AMERICAN CONSERVATIVE UNION**
**IN SUPPORT OF DEFENDANTS-APPELLANTS**

**<u>Statement of Interest of Amicus Curiae</u>**

Amicus the American Conservative Union (ACU) is one of the nation's foremost conservative political organizations. Its flagship event is the influential annual Conservative Political Action Conference, and its interest in this case is simple. ACU has a profound interest in securing the President of the United States from physical threats to his life and safety, which he faces all too often and which are now magnified as a result of the unprecedented, improvident, and unlawful injunction ordered by the district court. All parties have consented to the filing of this brief; hence ACU has authority to file under D.C. Cir. Rule 29(a)(2).[1]

Amicus respectfully submits this brief to alert the Court to three important issues not briefed so far. In their papers to date, the parties have briefed Article III standing, the merits, and the equities. They have not addressed: (1) whether Plaintiff has a ***cause of action***; (2) whether the relief sought (and granted) below was ***traditionally accorded by courts of equity***; and (3) whether Plaintiff's suit is barred by ***laches***.

---

[1] No party or party's counsel authored this brief in whole or in part, and no person other than the amicus curiae, its members, or its counsel contributed money intended to fund the preparing or submission hereof.

<u>**Summary of Argument**</u>

Amicus respectfully submits this brief to make three dispositive legal points that have not been fully briefed to date.

1. ***Plaintiff lacks a cause of action***. It is axiomatic that a plaintiff in federal court must have not only Article III standing, but a "cause of action." *Davis v. Passman*, 442 U.S. 228, 239 (1979). This is as true in ultra vires cases as it is in all other cases. *See Trump v. Sierra Club*, 588 U.S. 930, 930 (2019) (per curiam) (staying ultra vires injunction because "plaintiffs have no cause of action"). Under the controlling precedent of this Circuit and the Supreme Court, no ultra vires cause of action exists unless the statutory prohibition allegedly violated "confer[s] rights on the individual seeking ultra vires review." *Global Health Council v. Trump*, 153 F.4th 1 (D.C. Cir. 2025). This requirement, wholly overlooked by the court below, is not satisfied here. The statutory prohibition at issue in this case, 40 U.S.C. § 8106, which bars certain construction in the District of Columbia without congressional approval, secures a right to Congress, not to any private actors. It assuredly was not intended to confer rights on an organization dedicated to historic preservation (Section 8106 applies only to new construction, not to preserving historic sites) or on the single individual found to have standing by the court below, who alleges that the planned White House ballroom will cause her "aesthetic injury." Section 8106

was enacted sixty years before the concept of "aesthetic injury" as a legal right even entered into U.S. law.

2. ***The relief sought and granted here was not traditionally accorded by courts of equity.*** Because ultra vires review is a judge-made equitable remedy, it is subject to the historical restraints applicable to the federal courts' equitable jurisdiction. *See Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015). Thus the "availability of injunctive relief," including the "substantive prerequisites" for an injunction, depends in this case on whether the relief requested "was ***traditionally accorded by courts of equity***." *Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 319 (1979) (emphasis added) (internal quotation marks omitted). The relief sought here—an injunction to halt construction as a remedy for "aesthetic injury"—was ***not*** traditionally accorded in equity. Under the common law, it was a universal rule that equity would not enjoin construction of a building because of objections to its size, architecture, or alleged unsightliness. *See, e.g.*, 2 H.G. WOOD, THE LAW OF NUISANCES IN THEIR VARIOUS FORMS 1177 (3d ed. 1893) ("In all cases in order to warrant an injunction … the discomfort must be shown to be physical, and not such as depends on taste or imagination.").

3. ***Plaintiff's suit is barred by laches***. Plaintiff filed the operative complaint in this case after the East Wing had already been demolished and after the White House had become a construction site with a massive hole in its grounds, creating

3

obvious security risks to the President and the nation. The prejudice caused by Plaintiff's delay has been briefed by the parties in connection with injunctive equitable factors, but as will be shown below, Plaintiff's delay independently bars this suit under the doctrine of laches.

**Procedural Statement**

In its initial complaint, filed in December, 2025, Plaintiff, the National Trust for Historic Preservation, asserted claims under the Constitution and the Administrative Procedure Act, pleading Ariticle III standing on the basis of allegations that one of its members, Alison K. Hoagland, enjoys walking near the White House grounds "roughly once a month" and will suffer "aesthetic injury" if the new ballroom is built. JA75-76.

Ms. Hoagland asserts in a declaration that she objects to the "message" that (as she sees it) the planned ballroom will communicate. As the court below stated, "In Hoagland's words, the ballroom will 'overshadow[]' the White House and 'diminish [its] primacy,' thereby disrupting the message that 'our president lives in a *house*.'" *Nat'l Trust for Historic Preservation in the United States v. Nat'l Park Serv.*, No. 25-4316, 2026 U.S. Dist. LEXIS 39946, at *12 (D.D.C. Feb. 26, 2026) (original emphasis).

On February 26, 2026, District Judge Leon ruled that Ms. Hoagland's "aesthetic injury" gave Plaintiff Article III standing. *Id*. at *12-14. But the lower

court also correctly held that Plaintiff lacked a cause of action under either the Constitution or the APA. *See id.* In that same opinion, however, Judge Leon expressly invited Plaintiff to file a new complaint pleading an "ultra vires claim." *Id.* at *3 ("unless and until Plaintiff amends its existing complaint to include the necessary ultra vires claim, the Court cannot address the merits of the novel and weighty issues raised by this statutory challenge").

Plaintiff followed the court's instruction, amending its complaint to assert an ultra vires claim. A month later, on March 31, 2026, Judge Leon held that Plaintiff's "ultra vires claim" was likely to succeed on the merits. Recognizing that an ultra vires claim must assert the violation of a specific statutory prohibition, Judge Leon held that the planned ballroom violates 40 U.S.C. § 8106, which prohibits the construction of certain buildings in Washington, D.C. without congressional approval. *See Nat'l Trust for Historic Preservation in the United States v. Nat'l Park Serv.*, No. 25-4316, 2026 U.S. Dist. LEXIS 69920 (D.D.C. Mar. 31, 2026). On this basis, the lower court issued a preliminary injunction.

Following an appeal to this Court, expedited remand to the district court, and a modification to the injunction, the district court's injunction has been administratively stayed and is now before this Court for review.

**Argument**

Amicus respectfully files this brief to make three dispositive points: (1)

5

Plaintiff does not satisfy a core cause-of-action prerequisite for ultra vires review expressly set forth by this Court last year; (2) the relief sought and granted below was not traditionally accorded by courts of equity and hence exceeds the bounds of the federal judiciary's equitable jurisdiction; and (3) Plaintiff's claim is barred by laches. For each and all of these reasons, the injunction must be vacated.

## I. The Injunction Must Be Vacated Because the Statutory Prohibition at Issue Here Does Not Confer Rights on the Party Seeking Ultra Vires Review.

In an unusually proactive error, the lower court invited Plaintiff to plead an ultra vires action that Plaintiff had not alleged and does not have. Under controlling case law decided by this Circuit and the Supreme Court, no ultra vires claim can be asserted unless the statutory prohibition at issue confers rights on the party seeking ultra vires review—a requirement wholly overlooked by the district court and not satisfied here.

### A. The ultra vires cause of action is a judge-made remedy to safeguard rights Congress "intended to be enforced" and is <u>available only within "painstakingly limited" boundaries.</u>

The "ultra vires" cause of action is a judicially created equitable remedy, originally developed to provide review of administrative action where none existed in the pre-APA era. *See Nuclear Reg. Comm'n v. Texas*, 605 U.S. 665, 680 (2025). As the Supreme Court has described the relevant history:

Before enactment of the APA, those challenging agency action often lacked a

> statutory cause of action. Yet courts sometimes entertained "a bill in equity to attack administrative action when no statutory review was available." In particular, courts recognized a right to equitable relief where an agency's action was ultra vires—that is, "unauthorized by any law and . . . in violation of the rights of the individual."

*Id.* (citations omitted).

The touchstone for determining whether an ultra vires cause of action exists to enforce a given statute has always been whether Congress intended to create enforceable rights. *See Leedom v. Kyne*, 358 U.S. 184, 190-91 (1952) ("Where, as here, Congress has given a 'right' to the [plaintiffs,] it must be held that it ***intended that right to be enforced***.") (emphasis added); *Fed. Educ. Ass'n v. Trump,* 2025 U.S. App. LEXIS 25013, at *21-22 (D.C. Cir. Sept. 25, 2025) (Pan, J., concurring) ("*Ultra vires* claims … ensur[e] that courts can fall back on their 'general jurisdiction' to safeguard ***rights that Congress 'intended … to be enforced.'***") (emphasis added). Where Congress does not intend to create an enforceable right, ultra vires review "is not available." *Dalton v. Specter*, 511 U.S. 462, 477 (1994) (no ultra vires review where statute commits decision-making to executive discretion).

The passage of the APA in 1946, together with other modern judicial review statutes, clarified when Congress did and did not intend judicial review of executive action. Post-APA, ultra vires claims are not wholly foreclosed, but, "[b]ecause ultra vires review could become an easy end-run around the limitations" of "judicial-review statutes," the Court has "strictly limited nonstatutory ultra vires review" to

"painstakingly delineated procedural boundaries." *Nuclear Reg. Comm'n*, 605 U.S. at 681.

> **B.** **Under this Circuit's and the Supreme Court's controlling case law, no ultra vires cause of action can be stated unless the statutory "prohibition at issue" "confer[s] rights on the individual <u>seeking ultra vires review.</u>"**

The lower court in this case recognized that a plaintiff asserting an ultra vires claim must show that "'the challenged action is … contrary to a specific prohibition'" in a "'statute that is clear and mandatory.'" *Nat'l Trust for Historic Preservation v. Nat'l Park Serv.*, No. 25-4316, 2026 U.S. Dist. LEXIS 69920, at *13 (D.D.C. Mar. 31, 2026) (quoting *Fed. Express Corp. v. U.S. Dep't of Comm.*, 39 F.4th 756, 763, (D.C. Cir. 2022)). But the district court failed to acknowledge another of the "painstakingly delineated" boundaries cabining ultra vires review.

As this Circuit expressly held last year, "the [statutory] prohibition at issue must ***confer rights upon the individual seeking ultra vires review***." *Global Health Council*, 153 F.4th at 20 (emphasis added). In so holding, *Global Health* simply reaffirmed a requirement for ultra vires claims that the Supreme Court has adhered to for over a century. *See Nuclear Reg. Comm'n*, 605 U.S. at 680 (no ultra vires cause of action unless alleged statutory violation is a "***violation of the rights of the individual***") (emphasis added) (quoting *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902)); *Leedom v. Kyne*, 358 U.S. 184, 191 (1958) ("Where, as

here, ***Congress has given a 'right'*** to the [plaintiffs,] it must be held that it intended that right to be enforced.") (emphasis added).

The *Global Health* requirement—that "the [statutory] prohibition at issue must confer rights on the individual seeking ultra vires review," 153 F.4th at 20—is a ***cause of action*** requirement. Axiomatically, every plaintiff in federal court must have a "cause of action." *Davis v. Passman*, 442 U.S. 228, 239 (1979) (listing "cause of action," along with "standing" and "jurisdiction," as prerequisites to suit in federal court). This is as true in ultra vires cases as it is in all other cases. *See Trump v. Sierra Club*, 588 U.S. 930, 930 (2019) (per curiam) (staying ultra vires injunction because "plaintiffs have no cause of action").

The existence of a cause of action is "analytically distinct" from the existence of Article III injury. *Passman*, 442 U.S. at 239.  Whether a "cause of action" exists "depends not on the quality or extent of [plaintiff's] injury," but rather on "which class of litigants may enforce in court legislatively created rights or obligations." *Passman*. 442 Ul.S. at 239 & n.18. The *Global Health* requirement ensures that a party seeking ultra vires review of an alleged executive-branch violation of a statute falls within the "class of litigants" entitled to enforce that statute in court.

Absent the *Global Health* requirement, ultra vires review would be wholly untethered from congressional intent, from traditional limits on judicial review, and from established restraints on the federal courts' equity jurisdiction.  In the absence

of that requirement, any party with an Article III injury allegedly caused by a president's (supposed) violation of a statute could assert an ultra vires cause of action to enforce that statute. On this reasoning, a person paying for more gasoline at the pump (an Article III injury) could file an ultra vires suit claiming that a president's military actions abroad are in violation of the War Powers Act. Needless to say, that's not the law.

## C. The statutory prohibition at issue in this case does not confer rights on Plaintiff.

Because *Global Health* is controlling D.C. Circuit authority, Judge Leon was bound, as is this Court, to apply its clearly stated requirement. He failed to do so; indeed, he did not even acknowledge that requirement. As a result, the lower court never addressed whether the statutory "prohibition at issue" in this case "confer[s] rights on the individual seeking ultra vires review." *Global Health*, 153 F.4th at 20.

It does not.

The statutory prohibition found to have been violated in this case was originally set forth in a 1912 statute, which was recodified without change of meaning in 2002, and which provides:

> A building or structure shall not be erected on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress.

10

40 U.S.C. § 8106.[2]

As its plain text makes clear, Section 8106 confers no rights upon any individual or any class of individuals. On the contrary, like the War Powers Act, it was enacted to secure congressional authority and is therefore not enforcible through private causes of action. Forty years ago, this Circuit explained why there is no private right of action to enforce the War Powers Act, *see Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985), and what the Court said there applies equally here. The War Powers Act does "not identify any special class to be benefited," but rather, "for the protection of the general public, divide[s] responsibility between the executive and legislative branches." *Id.* at 209 (internal quotation marks and citations omitted). As *Sanchez-Espinoza* illustrates, no private cause of action exists to enforce a statute that secures a right to Congress itself and does not "identify any special class" or persons "to be benefited."

Although lower courts have sometimes failed to heed the Supreme Court's post-APA admonition that an ultra vires claim must show violation of a clear and mandatory statutory prohibition, in the cases where this admonition has been followed, and where courts have actually struck down executive action as ultra vires, the statutes at issue plainly conferred rights on the individuals seeking relief.

---

[2] *See* Pub. L. 107–217, Aug. 21, 2002, 116 Stat. 1206 (recodifying this provision "without substantive change").

For example, *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 26 F.4th 960 (D.C. Cir. 2022), struck down as ultra vires certain supervisor pay levels set by the U.S. Postal Service because those pay levels were in violation of statutes requiring the Postal Service (i) to pay its supervisors more than mail carriers and (ii) to pay them comparably to private sector employment. *See id.* at 972-74.

Similarly, *Chamber of Commerce v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996), struck down as ultra vires an executive order barring government contractors from permanently replacing certain striking employees because that order violated a statute specifically giving employers the right to do so. *See id.* at 1330.

In both these cases, the statutes at issue were enacted to benefit and protect identifiable private actors and conferred specific rights on those actors. Indeed, in *Chamber of Commerce*, the Court held that ultra vires review was available precisely because the challenged executive action "deprives [the plaintiff] of a right … granted by another statute." *Id.*

The same was true in *Leedom v. Kyne*, 358 U.S. 184 (1958), the Supreme Court's "leading case on post-APA ultra vires review." *Nuclear Reg. Comm'n*, 605 U.S. at 681.  In *Leedom*, the Court held invalid an NLRB-certified bargaining group consisting of both professional and nonprofessional employees, because a federal statute prohibited certification of such a group unless a majority of the professional employees voted for it (which they had not done). *See Leedom*, 358 U.S. at 185. The

NLRB conceded that it had violated the professional employees' "statutory rights," *id.* at 187, and the Court expressly rested the availability of judicial review on that ground:

> [The NLRB] deprived the professional employees of a 'right' assured to them by Congress…. [I]n these circumstances, a Federal District Court has jurisdiction of an original suit to prevent deprivation of a right so given.

*Id.* at 189. "Where, as here, Congress has given a 'right' to the professional employees it must be held that it intended that right to be enforced." *Id.* at 191.

In all these cases, an ultra vires cause of action existed because the individuals bringing suit were unambiguously intended beneficiaries of the violated statutes, and because those statutes unambiguously conferred rights on them.

Section 8106 is wholly different. Section 8106 has no specific intended beneficiaries. It identifies no class of protected litigants. It confers rights on no private actors whatsoever.

Whether a statute confers rights on a party seeking ultra vires review is determined by congressional intent. As Judge Pan explained in *Fed. Educ. Ass'n. Trump,* quoting *Leedom v. Kyne*, "*Ultra vires* claims" exist "to safeguard **rights that Congress 'intended … to be enforced.'**" 2025 U.S. App. LEXIS 25013 at *21-22 (Pan, J., concurring) (emphasis added) (quoting *Leedom*, 358 U.S. at 190-91). Here, Section 8106 was not intended to confer rights on a private nonprofit organization like the National Trust for Historic Preservation or on a member of that organization

who likes to walk in the vicinity of the White House and who alleges "aesthetic injury."

As to the National Trust, Section 8106 has little or no connection to historic preservation because the statute concerns only *new* construction. Section 8106 does not protect historic sites. It does not landmark. It has no application to the alteration or removal of existing structures—not even the most historic monuments in Washington. Rather, Section 8106 gives Congress authority over certain new construction and therefore confers no rights on an entity dedicated to historic preservation.

Nor is there any evidence that Section 8106 was enacted to confer rights on individuals claiming "aesthetic injury" due to planned construction. Indeed the very concept of "aesthetic injury" as a legal right only entered U.S. law in 1972, sixty years after the statute was enacted. *See Sierra Club v. Morton*, 405 U.S. 727, 734 (1972). Nothing in Section 8106 suggests that it was intended to confer enforceable rights on individuals who disagree with the "message" they see in a proposed White House renovation. Whether Ms. Hoagland's "aesthetic injury" suffices to give Plaintiff Article III standing is dubious, but it assuredly does **not** suffice to permit Plaintiff to bring an ultra vires claim, because Section 8106 was never intended to confer rights on private individuals claiming "aesthetic injury."

Section 8106 was enacted to secure a right to Congress, not private

14

individuals. Accordingly, Plaintiff has no ultra vires cause of action, and the injunction issued below must therefore be vacated.

**II.**     **The Relief Granted Below was Not Traditionally Accorded in Equity**.

Plaintiff also lacks an ultra vires cause of action because the relief sought (and granted below) does not fall within the traditional bounds of federal equity jurisdiction. Failing to apply the *Global Health* requirement, Judge Leon did something unprecedented: he granted an ultra vires injunction halting construction of a building on the basis of an alleged "aesthetic injury"—a species of relief unknown to traditional courts of equity.

Because ultra vires review is not a creature of statute but a judge-made equitable remedy, it is subject to the historical restraints generally applicable to the federal courts' equitable jurisdiction. *See Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015). While "equity is flexible," its "flexibility is confined within the broad boundaries of traditional equitable relief." *Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 322 (1979) (internal quotation marks omitted).

Accordingly, the "substantive prerequisites for obtaining an equitable remedy as well as the general availability of injunctive relief" in ultra vires cases "depend on traditional principles of equity jurisdiction." *Id*. at 319 (internal quotation marks omitted). Thus the availability of an ultra vires injunction in any given case depends

on whether the relief requested "was ***traditionally accorded by courts of equity***." *Id*.

(emphasis added).

The relief sought in this case—an injunction to halt construction as a remedy

for "aesthetic injury" allegedly caused by a building's size or architecture—was ***not***

traditionally accorded by courts of equity.

Under the common law, equitable actions to remove or halt construction of a

building sounded in nuisance, and it was a "universal rule" in nuisance cases that the

"size" or "quality" of a structure did not constitute a basis for equitable relief:

> [I]t may be laid down as a universal rule, that the size and quality of the improvement never of themselves constitute it a nuisance. A land-owner may erect upon his land the smallest or most temporary kind of dwelling-house or store in close proximity to the finest mansion, [and] equity will not interfere.

*Falloon v. Schilling*, 29 Kan. 292, 295-96 (1883).

Traditional nuisance law unequivocally rejected the notion that equity would

interfere with a building because of alleged unsightliness. As the leading nuisance

treatise of the late nineteenth and early twentieth centuries put it, "the law will not

declare a thing a nuisance because it is unpleasant to the eye." 1 H.G. WOOD, THE

LAW OF NUISANCES IN THEIR VARIOUS FORMS 24 (3d ed. 1893). This principle was

particularly emphasized in equity: "In all cases in order to warrant an injunction …

the discomfort must be shown to be physical, and not such as depends on taste or

imagination." 2 *id.* at 1177 (emphasis omitted).

16

In 1937, a state supreme court chief justice stated it would be:

a vast extension of the former powers of the courts to say that a court of equity may enjoin as a nuisance the continuation of a thing because it is unsightly. So far as I have been able by an exhaustive search to discover, no judicial decision in either England or America has ever so held.

*Parkersburg Builders Material Co. v. Barrack*, 118 W. Va. 608, 615-16 (1937) (Kenna, Pres., concurring). Cases in accord are legion.[3]

Thus the ultra vires relief sought and ordered in this case is not grounded in "traditional principles of equity jurisdiction," but rather exceeds the "boundaries of traditional equitable relief." *Grupo Mexicano*, 527 U.S. at 319, 322. For this reason too, the district court's injunction must be vacated.

## III. Plaintiff's Suit Is Barred by Laches.

"Laches is 'a defense developed by courts of equity' to protect defendants against 'unreasonable, prejudicial delay'" in bringing a claim. *SCA Hygiene Prods.*

---

[3] *See, e.g.*, *Ala. Power Co. v. Stringfellow*, 153 S. 629 (Ala. 1934); *Salt River Valley Water Users' Assn. v. Arthur*, 74 P.2d 582 (Ariz. 1937); *Green v. Castle Concrete Co.*, 509 P.2d 588 (Colo. 1973); *N.W. Water Corp. v. Pennetta*, 479 P.2d 398 (Colo. App. 1970); *B & W Mgt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879 (D.C. App. 1982); *Jillson v. Barton*, 229 S.E.2d 476 (Ga. App. 1975); *White v. Bernhart*, 241 P. 367 (Idaho 1925); *Wernke v. Halas*, 600 N.E.2d 117 (Ind. App. 1992); *Livingston v. Davis*, 50 N.W.2d 592 (Iowa 1951); *Acadian Heritage Realty v. City of Lafayette*, 451 S.2d 17 (La. App. 1984); *Barnes v. Hathorn*, 54 Me. 124 (1866); *Feldstein v. Kammauf*, 121 A.2d 716 (Md. 1956); *Perry Mount Park Cemetery Assn. v. Netzel*, 264 N.W. 303 (Mich. 1936); *State ex rel. Stoyanoff v. Berkely*, 458 S.W.2d 305 (Mo. 1970); *Crabtree v. City Auto Salvage Co.*, 340 S.W.2d 940 (Tenn. App. 1960); *Shamburger v. Scheurrer*, 198 S.W. 1069 (Tex. App. 1917); *Mathewson v. Primeau*, 395 P.2d 183 (Wash. 1964).

*Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 333 (2019) (citation omitted). "[L]aches bars the plaintiff whose unreasonable delay in prosecuting a claim or protecting a right has worked a prejudice to the defendant." *Id*. (quoting 1 D. DOBBS, LAW OF REMEDIES §2.3(5), p. 89 (2d ed. 1993)).

Although in ordinary cases laches will be found only when plaintiff has very substantially delayed filing suit, "laches is not like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties." *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946). Thus it is long-settled law that in appropriate circumstances, a delay as short as six months can be sufficient for laches. *See, e.g.*, *John Hancock Life Ins. Co. of N.Y. v. Solomon Baum Irrevocable Family Life Ins. Trust*, 783 Fed. Appx. 89, 91 (2d Cir. 2019); *The Everosa*, 93 F.2d 732, 736 (1st Cir. 1937).

Here, the Plaintiff's seven-month delay was too long. Last July, President Trump announced his plan to demolish the old East Wing and build a ballroom in its place. Plaintiff did not sue at that time. Three months later, in October, 2025, President Trump announced that "ground had been broken," JA36, and on October 21, heavy machinery began operating on White House grounds. *Id*. Still Plaintiff did not sue. Over the last week in October, the old East Wing was demolished. Still Plaintiff did not sue.

In December 2025, Plaintiff filed suit, but as the district court correctly held on February 26, 2026, Plaintiff's original complaint stated no valid causes of action. It was only at the end of February, 2026—seven months after President Trump first announced the East Wing renovation project—that Plaintiff filed the now-operative complaint, stating the "ultra vires" claim upheld by the court below.

By that time, not only was the old East Wing demolished, but the grounds of the former East Wing and indeed the White House itself had become a heavy construction site. The laying of below-grade structural concrete was already in progress. Today, substantial work on below-ground military and security facilities has commenced, and the ongoing construction has left the White House grounds exposed.  JA252.

In these circumstances, equity should not countenance Plaintiff's seven-month delay. The old East Wing is gone, the new building's construction has begun, the White House is an open-wound construction zone, and Plaintiff's invocation of equity to protect one of its members' aesthetic interests comes too late.

## <u>Conclusion</u>

For the foregoing reasons, Amicus respectfully urges the Court to vacate the preliminary injunction.

Dated: May 15, 2026

Respectfully submitted,

_____/s/ Richard Jaffe_____

Richard Jaffe
428 J Street, 4th Floor
Sacramento, California 95814
Tel: 916-492-6038
Fax: 713-626-9420
rickjaffeesquire@gmail.com

JED RUBENFELD
127 Wall St.
New Haven CT 06511
Tel.: 203-432-7631
jed.rubenfeld@yale.edu

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Prcedure 32(a)(7)(B) because, excluding the sections not counted, it contains 4,613 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font, a proportionally spaced typeface.

_____/s/ Richard Jaffe_____
Richard Jaffe, Esq.

# CERTIFICATE OF SERVICE

The foregoing brief has been filed through the federal judiciary's electronic filing platform, which ensures delivery to and service on counsel for all parties.

_____/s/ Richard Jaffe_____
Richard Jaffe, Esq.